SCOTT N. SCHOOLS (SC 9990)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
MELANIE L. PROCTOR (CSBN 228971)
Melanie.Proctor@usdoj.gov
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6730
    FAX: (415) 436-6927

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| STEPHEN CHANG and HONGYAN CHEN, | ) ) ) | No. C 07-3562 SBA |
| Plaintiffs, | ) ) | |
| v. | ) ) | DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT; AND [PROPOSED] ORDER |
| MICHAEL CHERTOFF, Secretary, Department of Homeland Security; ROBERT S. MUELLER, III, Director of the Federal Bureau of Investigation, | ) ) ) ) ) | |
| Defendants. | ) ) ) | Date:        October 16, 2007 Time:        1:00 p.m. Courtroom:  3, 3rd Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    NOTICE OF MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.   GENERAL PRINCIPLES APPLICABLE TO THIS MOTION . . . . . . . . . . . . . . . . 2

      A.    LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    ADJUSTMENT OF STATUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.    RELIEF AVAILABLE UNDER THE MANDAMUS ACT AND
            THE ADMINISTRATIVE PROCEDURE ACT . . . . . . . . . . . 5

V.    ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.    ALL DEFENDANTS EXCEPT CHERTOFF SHOULD BE DISMISSED . . . . . 5

      B.    RELIEF IS NOT AVAILABLE UNDER THE APA . . . . . . . . . . . . . . . . . . . . . 6

            1.    Plaintiff Seeks to Compel Multiple Actions . . . . . . . . . . . . . . . . . . . . . 6

            2.    Compelling Action By USCIS Would Necessarily Interfere
                  With the FBI's Discretion . . . . . . . . . . . 6

            3.    The Delay Is Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                  a.    A Rule of Reason Governs the Agency Decisions at Issue . . . . . . 7

                  b.    There Is No Congressionally Mandated Timetable . . . . . . . . . . . 8

                  c.    The Impact of the Delay is Minimal in Comparison
                        with the National Interest in Complete and Thorough
                        Background Checks . . . . . . . . 10

                  d.    The Effect of Expedition Would Intrude on Agency
                        Discretion and Prejudice Other "First In Line" Applicants . . . . . 11

i

**TABLE OF CONTENTS** (continued)

e.     The Agencies are Exercising Every Effort to Address
the Delay . . . . . . . . 13

C.     MANDAMUS IS NOT AVAILABLE BECAUSE PLAINTIFF'S
CLAIM IS NOT CLEAR AND CERTAIN . . . . . . . . . . 14

VI.     **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

Alkenani v. Barrows,
 356 F. Supp. 2d 652 (N.D. Tex. 2005) ........................................................ 14

Allied Chemical Corp. v. Daiflon, Inc.,
 449 U.S. 33 (1980) ....................................................................................... 5

Anderson v. Liberty Lobby, Inc.,
 477 U.S. 242 (1986) ..................................................................................... 3

In re Barr Laboratories,
 930  F.2d 72 (D.C. Cir. 1991) ................................................................ 8, 12

Boim v. Quranic Literacy Institute,
 291 F.3d 1000 (7th Cir. 2002) .................................................................. 12

Califano v. Sanders,
 430 U.S. 99 (1977) ....................................................................................... 5

Celotex Corp. v. Cattrett,
 477 U.S. 317 (1986) ..................................................................................... 3

Cheney v. United States District Court for the District of Columbia,
 542 U.S. 367 (2004) ..................................................................................... 5

Cordoba v. McElroy,
 78 F. Supp. 2d 240 (S.D.N.Y. 2000) .......................................................... 9

Dmitriev v. Chertoff,
 2007 WL 1319533 (N.D. Cal. May 4, 2007) .............................................. 6

Eldeeb v. Chertoff, et al.,
 2007 WL 2209231 (M.D. Fla. July 30, 2007) ............................. 7, 9, 10, 13

Espin v. Gantner,
 381 F. Supp. 2d 261 (S.D.N.Y. 2005) ...................................................... 14

Fraga v. Smith,
 607 F. Supp. 517 (D. Or. 1985) ................................................................ 12

Freeman v. Arpaio,
 125 F.3d 732 (9th Cir. 1997) ...................................................................... 3

## FEDERAL CASES (continued)

Heckler v. Ringer,
     466 U.S. 602 (1984) ........................................................................................... 5

INS v. Miranda,
     459 U.S. 14 (1982) ............................................................................................ 9

Kildare v. Saenz,
     325 F.3d 1078 (9th Cir. 2003) ..................................................................... 5, 14

Konchitsky v. Chertoff,
     2007 WL 2070325 (N.D. Cal. July 13, 2007) .................................................. 6

Li v. Chertoff,
     432 F. Supp. 2d 1172 (S.D. Cal. 2007) ........................................................... 7

Liberty Fund, Inc. v. Chao,
     394 F. Supp. 2d 105 (D.D.C. 2005) ............................................... 8, 10, 11, 13

Manzoor v. Chertoff,
     472 F. Supp. 2d 801 (E.D. Va. 2007) ............................................................ 13

Marincas v. Lewis,
     92 F.3d 195 (3d Cir. 1996) .............................................................................. 9

Mashpee Wampanoag Tribal Council, Inc. v. Norton,
     336 F.3d 1094 (D.C. Cir. 2003) .................................................................... 12

Nelson v. Kleppe,
     457 F. Supp. 5 (D. Idaho 1976) ...................................................................... 6

Norton v. Southern Utah Wilderness Alliance,
     542 U.S. 55 (2004) ...................................................................................... 5, 6

Nova Stylings Inc. v. Ladd,
     695 F.2d 1179 (9th Cir. 1983) ......................................................................... 5

Orkin v. Taylor,
     487 F.3d 734 (9th Cir. 2007) .......................................................................... 8

Patil v. Mueller, et al.,
     2007 WL 1302752 (E.D. Va. Apr. 30, 2007) ................................................ 10

## FEDERAL CASES (continued)

Razaq v. Poulos,
    2007 WL 61884 (N.D. Cal. Jan. 8, 2007) .......................................................... 9

Rockbridge v. Lincoln,
    449 F.2d 567 (9th Cir. 1971) .......................................................................... 5

Safadi v. Howard,
    466 F. Supp. 2d 696 (E.D. Va. 2006) .............................................................. 10

Saleh v. Ridge,
    367 F. Supp. 2d 508 (S.D.N.Y. 2005) ...................................................... 13, 14

Skelly Oil Co. v. Phillips Petroleum Co.,
    339 U.S. 667 (1950) ........................................................................................ 5

Sozanski v. Chertoff,
    2006 WL 4516968 (N.D. Tex. Dec. 11, 2006) ................................................ 7

Staacke v. U.S. Department of Labor,
    841 F.2d 278 (9th Cir. 1988) .......................................................................... 5

Sze v. INS,
    1997 WL 446236 (N.D. Cal. Jul. 24, 1997) .................................................. 11

Takkallapalli v. Chertoff,
    487 F. Supp. 2d 1094 (W.D. Mo. 2007) .......................................................... 7

Telecomm. Research and Action Ctr. v. FCC,
    750 F.2d 70 (D.C. Cir. 1984) .................................................................... 7, 10

Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,
    435 U.S. 519 (1978) ...................................................................................... 13

Walters v. Reno,
    145 F.3d 1032 (9th Cir. 1998) ...................................................................... 12

Wright v. Califano,
    587 F.2d 345 (7th Cir. 1978) .................................................................. 12, 13

Wright v. City of Roanoke Redevelopment and Housing,
    479 U.S. 418 (1987) ........................................................................................ 8

## FEDERAL CASES (continued)

Yan v. Mueller,
        No. H-07-0313, 2007 WL 1521732 (S.D. Tex. May 24, 2007) ................................. 7, 13

## FEDERAL STATUTES & REGULATIONS

5 U.S.C. § 551(13) ................................................................................................................ 5

5 U.S.C. § 555(b) ................................................................................................................ 11

5 U.S.C. § 701, et seq. .......................................................................................................... 5

5 U.S.C. § 701(a)(2) ............................................................................................................. 5

5 U.S.C. § 706(1) ............................................................................................................ 5, 12

6 U.S.C. § 271(b) .................................................................................................................. 3

6 U.S.C. § 271(b)(5) .............................................................................................................. 6

6 U.S.C. § 551(d) .................................................................................................................. 3

6 U.S.C. § 557 ....................................................................................................................... 6

8 U.S.C. § 1105(a) ................................................................................................................ 4

8 U.S.C. § 1105(b)(1) ........................................................................................................... 8

8 U.S.C. § 1255 ..................................................................................................................... 3

8 U.S.C. § 1255(a) ............................................................................................................. 3, 8

8 U.S.C. § 1571 ..................................................................................................................... 8

28 U.S.C. § 2201 ................................................................................................................... 5

Immigration Services and Infrastructure Improvements Act of 2000,
        Pub. L. No. 106-313, 114 Stat. 1251 (enacted Oct. 17, 2000) ........................................ 8

Intelligence Reform and Terrorism Prevention Act of 2004,
        Pub. L. No. 108-458, § 3001(g), 118 Stat. 3638 (2004) .................................................. 8

8 C.F.R. § 245 et seq ............................................................................................................. 3

**RULES**

Fed. R. Civ. P. 56(c) .................................................................................................................... 2

**REPORTS**

The 9/11 Commission Report,
     2004 WL 1634382 (July 22, 2004) ................................................................................ 10

1  SCOTT N. SCHOOLS (SC 9990)
   United States Attorney
2  JOANN M. SWANSON (CSBN 88143)
   Chief, Civil Division
3  MELANIE L. PROCTOR (CSBN 228971)
   Melanie.Proctor@usdoj.gov
4  Assistant United States Attorney

5    450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
6    Telephone: (415) 436-6730
     FAX: (415) 436-6927
7
   Attorneys for Defendants
8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                         OAKLAND DIVISION
11
   STEPHEN CHANG and HONGYAN        )    No. C 07-3562 SBA
12 CHEN,                            )
                                    )
13            Plaintiffs,           )
                                    )    DEFENDANTS' OPPOSITION TO
14    v.                            )    PLAINTIFF'S MOTION FOR SUMMARY
                                    )    JUDGMENT AND CROSS MOTION FOR
15 MICHAEL CHERTOFF, Secretary,     )    SUMMARY JUDGMENT; AND
   Department of Homeland Security; )    [PROPOSED] ORDER
16 ROBERT S. MUELLER, III, Director of the )
   Federal Bureau of Investigation, )    Date:       October 16, 2007
17                                  )    Time:       1:00 p.m.
              Defendants.           )    Courtroom:  3, 3rd Floor
18 _____ )

19                     **I. NOTICE OF MOTION**

20         PLEASE TAKE NOTICE THAT on October 16, 2007, at 1:00 p.m., before the Honorable

21 Saundra B. Armstrong, Courtroom No. 3, 1301 Clay Street, Oakland, California 94612, Defendants

22 Michael Chertoff, et al., by their attorneys, Scott N. Schools, United States Attorney for the Northern

23 District of California, and Melanie L. Proctor, Assistant U.S. Attorney, will move this Court for an

24 order granting summary judgment in Defendants' favor.  Defendants' Motion is based on this notice,

25 the points and authorities in support of this motion, the declarations of Michael Cannon and

26 Constance Yuen, the pleadings on file in this matter, and on such oral argument as the Court may

27 permit.

28 ///

DEFENDANTS' OPPOSITION AND CROSS MOTION
07-3562 SBA                              1

## II.   INTRODUCTION

Plaintiffs Stephen Chang and Hongyan Chen ("Plaintiffs") ask this Court to issue a writ of mandamus, compelling Defendants reach a decision on Plaintiff Chen's application for adjustment of status which has been pending for less than two years.  They also ask the Court to find that Defendants have violated the Administrative Procedure Act ("APA"), and to grant relief under the Declaratory Judgment Act.  Plaintiffs' claims must fail.  Plaintiff Chen's application remains pending because her name check is not yet complete.  Additionally, Plaintiff Chen's name check has been pending only since February 10, 2006, less than two years.  The facts are undisputed, and Defendants are entitled to judgment as a matter of law.  Accordingly, Defendants respectfully ask this Court to grant their motion for summary judgment.

## III.   BACKGROUND

On February 1, 2006, Plaintiff Chen filed an I-485 application for adjustment of status, based on her marriage to a United States citizen.  <u>See</u> Declaration of Constance Yuen, pp. 7-8 ¶ 19 (attached as Exh. A).  On the same date, Plaintiff Chang filed a visa petition on Plaintiff Chen's behalf.  <u>Id.</u>  On February 10, 2006, U.S. Citizenship and Immigration Services ("USCIS") submitted a name check request to the Federal Bureau of Investigation ("FBI").  <u>Id.</u>  On May 17, 2006, Plaintiffs appeared at the Application Support Center for an interview.  <u>Id.</u>  Plaintiffs' application and visa petition are ready to be adjudicated except for Plaintiff Chen's pending background and security check  <u>Id.</u>, p. 8 ¶ 20.

Plaintiff filed the instant Complaint on July 10, 2007.  On September 10, 2007, Defendant Michael Chertoff answered the Complaint, and Defendant Robert S. Mueller moved to dismiss for lack of jurisdiction.  On September 10, 2007, Plaintiffs moved the Court for summary judgment.

## IV.   GENERAL PRINCIPLES APPLICABLE TO THIS MOTION

### A.   LEGAL STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is genuine only if there is sufficient evidence for a

1    reasonable fact finder to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477

2    U.S. 242, 248-49 (1986). A fact is material if the fact may affect the outcome of the case. See id.

3    at 248. The Ninth Circuit has declared that "[i]n considering a motion for summary judgment, the

4    court may not weigh the evidence or make credibility determinations, and is required to draw all

5    inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732,

6    735 (9th Cir. 1997). A principal purpose of the summary judgment procedure is to identify and

7    dispose of factually unsupported claims. See Celotex Corp. v. Cattrett, 477 U.S. 317, 323-24 (1986).

8         B.    ADJUSTMENT OF STATUS

9         Section 245 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1255, authorizes

10   the Secretary of the Department of Homeland Security ("Secretary")[1] to adjust to permanent

11   residence status certain aliens who have been admitted into the United States. Adjustment of status

12   is committed to the Secretary's discretion as a matter of law. Section 1255(a) expressly provides:

13        The status of an alien who was inspected and admitted or paroled into the United
          States . . . may be adjusted by the [Secretary], in his discretion and under such
14        regulations as he may prescribe, to that of an alien lawfully admitted for permanent
          residence[.]

15

16   8 U.S.C. 1255(a) (emphasis added). An applicant for adjustment of status must meet three

17   requirements: she must apply for such status, be eligible to receive an immigrant visa, and the visa

18   must be immediately available to her at the time she applies. Id. Significantly, the statute does not

19   set forth any time frame in which a determination must be made on an application to adjust status.

20   In addition, the regulations setting forth the procedures for aliens to apply to adjust status do not set

21   forth a time frame for adjudication, and allow discretion in how to conduct the adjudication. See

22   8 C.F.R. § 245 et seq.

23        Before a decision is rendered on an alien's application to adjust status, U.S. Citizenship and

24   Immigration Services ("USCIS") conducts several forms of security and background checks to

25

26

27        [1]On March 1, 2003, the Department of Homeland Security and its United States Citizenship
     and Immigration Services assumed responsibility for the adjustment program. 6 U.S.C. § 271(b).
28   Accordingly, the discretion formerly vested in the Attorney General is now vested in the Secretary
     of Homeland Security. 6 U.S.C. § 551(d).

1    ensure that the alien is eligible for the benefit sought and that she is not a risk to national security

2    or public safety.  See Exh. A, p. 1 ¶ 3.  USCIS also conducts investigations into the bona fides of

3    petitions and applications that have been filed, in order to maintain the integrity of the application

4    process and to ensure that there is no fraud in the application process. See 8 U.S.C. § 1105(a)

5    (authorizing "direct and continuous liaison with the Directors of the Federal Bureau of Investigation

6    [("FBI")] and the Central Intelligence Agency and with other internal security officers of the

7    Government for the purpose of obtaining and exchanging information for use in enforcing the

8    provisions of this chapter in the interest of the internal and border security of the United States").

9    These checks currently include extensive checks of various law enforcement databases, including

10   the FBI. See Exh. A, p. 2 ¶ 4.

11        The FBI's name check process is quite complex.  See Declaration of Michael Cannon., p.

12   2 ¶ 4 (attached as Exh. B).  Name checks are performed at the request of a variety of organizations,

13   including the federal judiciary, friendly foreign police and intelligence agencies, and state and local

14   governments.  Id.  When the FBI conducts a name check, the name is checked against the FBI's

15   Universal Index, in a four-stage process. Id., pp. 5-7 ¶¶ 11-15.  Generally, the FBI employs a first-

16   in, first-served protocol.  Id., p. 8, ¶ 18.  However, when an applicant's name check requires a

17   review of numerous FBI records and files, the name check may require additional time until all

18   responsive records are located and reviewed.  Id.  USCIS determines which name checks are to be

19   expedited.  Id.; see also USCIS Clarifies Criteria to Expedite FBI Name Check (attached as Exh. C).

20   An expedited name check proceeds to the front of the queue, in front of others awaiting processing.

21   Exh. B, p. 8 ¶ 18.

22        As discussed in the Cannon Declaration,  the FBI processed more than 3.4 million name

23   checks during fiscal year 2006.  Id., p. 8 ¶ 19.   The FBI is working as expeditiously as possible to

24   reduce the small percentage of immigration name checks for which a backlog exists.  This backlog

25   results from the vast number of requests the FBI receives from USCIS and other customers, as well

26   as the requirement for enhanced security measures existing since September 11, 2001.  Id., p. 9 ¶

27   21. A variety of factors play into processing times, including "hits," common names, and expedited

28   name checks.  Id., p. 10 ¶ 24.

1

2

## C.   RELIEF AVAILABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT AND THE MANDAMUS ACT

3

Judicial review under the APA, 5 U.S.C. § 701, et seq., is specifically precluded where

4

"agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Agency action,

5

as defined under the APA, also includes "a failure to act." 5 U.S.C. § 551(13). Under 5 U.S.C.

6

§ 706(1), a court may compel "agency action unlawfully withheld or unreasonably delayed." The

7

elements of a claim under § 706(1) are the existence of a discrete, ministerial duty; a delay in

8

carrying out that duty; and a determination that the delay was unlawful or unreasonable in light of

9

prejudice to one of the parties. Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55 (2004);

10

Rockbridge v. Lincoln, 449 F.2d 567, 569-73 (9th Cir. 1971).

11

The APA does not provide an independent jurisdictional basis. Califano v. Sanders, 430

12

U.S. 99, 107 (1977); Staacke v. U.S. Department of Labor, 841 F.2d 278, 282 (9th Cir. 1988).

13

Rather, it merely provides the standards for reviewing agency action once jurisdiction is otherwise

14

established. Staacke, 841 F.2d at 282. Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201

15

("DJA"), does not provide an independent basis for jurisdiction; rather, it only expands the range

16

of remedies available in federal courts. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-

17

72 (1950).

18

Mandamus is an extraordinary remedy. See Cheney v. United States District Court for

19

the District of Columbia, 542 U.S. 367, 392 (2004) (Stevens, J., concurring); Allied Chemical

20

Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980). The United States Supreme Court has stated that

21

"[t]he common law writ of mandamus is intended to provide a remedy for a plaintiff only if . . . the

22

defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616 (1984).

23

The Ninth Circuit has explained that

24

25

26

> [m]andamus . . . is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available.

27

Kildare v. Saenz, 325 F.3d 1078, 1084 (9th Cir. 2003). Thus, "'mandamus does not lie to review

28

the discretionary acts of officials.'" See Nova Stylings Inc. v. Ladd, 695 F.2d 1179, 1180 (9th Cir.

1  1983), quoting <u>Nelson v. Kleppe</u>, 457 F. Supp. 5, 8 (D. Idaho 1976).

2  ## V.  ANALYSIS

3  ### A.    ALL DEFENDANTS EXCEPT CHERTOFF SHOULD BE DISMISSED

4  Courts in this district have recognized that since March 1, 2003, the Department of

5  Homeland Security has been the agency responsible for implementing the Immigration and

6  Nationality Act.  <u>See</u> 6 U.S.C. §§ 271(b)(5), 557; <u>Konchitsky v. Chertoff</u>, No. C-07-00294 RMW,

7  2007 WL 2070325, at *6 (N.D. Cal. July 13, 2007); <u>Dmitriev v. Chertoff</u>, No. C 06-7677 JW, 2007

8  WL 1319533, at *4 (N.D. Cal. May 4, 2007).  Accordingly, the only relevant Defendant here is

9  Michael Chertoff, in his capacity as Secretary of the Department of Homeland Security, and

10  Defendant Robert S. Mueller should be dismissed.

11  ### B.    RELIEF IS NOT AVAILABLE UNDER THE APA

12  #### 1.    Plaintiffs Seek To Compel Multiple Actions

13  The United States Supreme Court's decision in <u>Southern Utah Wilderness Alliance</u> mandates

14  against granting relief.   There, the Court determined that the APA's reference to "a failure to act"

15  is limited to a <u>discrete</u> action that the agency is required to take.  542 U.S. at 64.  Here, Plaintiffs ask

16  the Court to compel multiple actions, including whether USCIS requests an expedited name check,

17  and the pace at which USCIS issues a decision once Plaintiff Chen's name check is complete.  <u>See</u>

18  Complaint, p. 4, Prayer for Relief.  USCIS has exercised its discretion to determine which cases

19  merit being moved to the head of the name check line for expedited processing.  <u>See</u> Exh. C.

20  Plaintiffs can point to no law requiring USCIS to request that the FBI expedite Plaintiff Chen's name

21  check, or setting a time frame upon the FBI's exercise of discretion in conducting the investigation.

22  Furthermore, it is possible that upon receiving the results of the name check, USCIS will need to

23  conduct further investigation.  Accordingly, Plaintiffs' request for relief necessarily would impact

24  multiple actions.  As such, relief is not available under the APA.

25  #### 2.    Compelling Action By USCIS Would Necessarily Interfere With the FBI's Discretion

26

27  Numerous courts have recognized the FBI's discretion "in determining the timing for

28  conducting the many name check requests that it receives and the manner in which to conduct those

checks." <u>Yan v. Mueller</u>, No. H-07-0313, 2007 WL 1521732, at *6 (S.D. Tex. May 24, 2007) ; <u>see also</u> <u>Takkallapalli v. Chertoff</u>, 487 F. Supp. 2d 1094, 1099 (W.D. Mo. 2007) (stating that where delay was due to incomplete name check, "Defendants' conduct [was] sufficient to avoid judicial intervention."); <u>Li v. Chertoff</u>, 482 F. Supp. 2d 1172, 1179 (S.D. Cal. 2007) (recognizing that USCIS has wide discretion "in matters pertaining to the pace of the adjudication of I-485 applications."); <u>Sozanski v. Chertoff, et al.</u>, No. 06-CV-0993 N, 2006 WL 4516968, at *1 (N.D. Tex. Dec. 11, 2006) (holding that federal district courts lack jurisdiction to compel the FBI to perform name checks in adjustment of status cases).  Compelling USCIS to process Plaintiff Chen's application in a certain time frame would amount to compelling the FBI to exercise its discretion in a certain manner.  Accordingly, Plaintiffs essentially seek to compel a discretionary action, and relief is unavailable under the APA

### 3.    The Delay is Reasonable

Even if the actions at issue were not discretionary, Plaintiffs have failed to establish that a delay of approximately seventeen months, as alleged in their Complaint, constitutes unreasonable delay.  To determine whether a delay is egregious, such that relief under the APA is warranted, several circuits have adopted the six-part test first articulated in <u>Telecomm. Research and Action Ctr. v. FCC</u>, 750 F.2d 70, 80 (D.C. Cir. 1984) ("<u>TRAC</u>").

### a.    A Rule of Reason Governs the Agency Decisions at Issue

The first <u>TRAC</u> factor requires an agency to govern decisions with a rule of reason.  <u>TRAC</u>, 750 F.2d at 80.  Given the large volume of petitions and applications requiring adjudication, the extensive background check that is required for national security and public safety, and the limited resources available to it, the FBI is proceeding in an orderly fashion with the completion of name checks in the order in which they are received.  <u>See</u> <u>Eldeeb v. Chertoff</u>, No. 07cv236-T-17EAJ, 2007 WL 2209231, at *2 (M.D. Fla. July 30, 2007).  Once the FBI name check in this case has been completed, USCIS will promptly adjudicate Plaintiffs' applications. Exh. A, p. 8 ¶ 20.  Further, USCIS regularly monitors the case to determine whether the name check remains pending.  <u>Id.</u>, p. 4 ¶ 14.  Public safety requires USCIS to make certain that the background checks have been completed and any outstanding issues resolved before it reaches a decision.

1    In Plaintiffs' case, this means that USCIS must await the results of the FBI name check

2    before reaching a decision on the I-485 application, and the FBI must be given time to perform an

3    accurate and thorough check. Exh. A, p. 8 ¶ 20. The FBI's "first in, first out" processing approach

4    is a method that is "deserving of deference." Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 118

5    (D.D.C. 2005); see also In re Barr Lab. Inc., 930 F.2d 72, 76 (D.C. Cir. 1991) ("The agency is in a

6    unique and authoritative position to view its projects as a whole, estimate the prospects for each, and

7    allocate its resources in the optimal way.").

8                    b.    There Is No Congressionally Mandated Timetable

9    The second TRAC factor does not apply to the present case because there is neither a

10   statutory requirement that the FBI process the name check nor one requiring USCIS to adjudicate

11   the application within a certain amount of time. Contra Intelligence Reform and Terrorism

12   Prevention Act of 2004, Pub. L. No. 108-458, § 3001(g), 118 Stat. 3638 (2004) (requiring

13   Government personnel security checks to be completed within a certain time frame). Additionally,

14   Congress has not provided any clear guidelines indicating the speed at which the FBI and USCIS

15   should conduct its adjudications. Congress has, however, required that USCIS conduct certain

16   criminal and national security background checks to ensure eligibility for adjustment of status. See

17   8 U.S.C. §§ 1105(b)(1), 1255(a).

18   Defendants acknowledge that Congress has observed that in most instances, applications for

19   immigration benefits should not take more than 180 days to adjudicate. 8 U.S.C. § 1571. However,

20   the statute expresses a "sense of Congress," and is not a mandate. Id. The language in § 1571 is

21   merely precatory, and does not impose a deadline on Defendants. See Wright v. City of Roanoke

22   Redevelopment and Housing, 479 U.S. 418, 432 (1987) (statute phrased in precatory terms does not

23   create a substantive right); Orkin v. Taylor, 487 F.3d 734, 739 (9th Cir. 2007) ("'Sense of Congress'

24   provisions are precatory provisions, which do not in themselves create individual rights, or, for that

25   matter, any enforceable law.").

26   Furthermore, the statute was enacted in 2000, prior to the events of September 11, 2001. See

27   Immigration Services and Infrastructure Improvements Act of 2000, Pub. L. No. 106-313, 114 Stat.

28   1251 (enacted Oct. 17, 2000). Accordingly, it no longer provides a meaningful standard against

which the Court can measure the delay at issue in this case. The events of September 11, 2001 marked a dramatic shift in issues involving national security. See Exh. B, pp. 8-9 ¶¶ 19-20. Courts have taken note of this change:

> It is well known that since September of 2001, the FBI's resources have been sorely taxed by the demands that have been made on it by the Administration. Legitimate national security concerns, intensified by the sophistication of some of the threats to the lives of people in this country, have forced federal agencies to be considerably more careful and thorough in their investigations than they were in the past. In short, there was a lot more work for the FBI to do and it had to be done a lot more carefully.

Razaq v. Poulos, No. C 06-2461 WDB, 2007 WL 61884, at *12 (N.D. Cal. Jan. 8, 2007).

Where there are no statutory guidelines, and in order to establish a "rule of reason," this Court must consider the factors that contribute to the backlogs that both the FBI and USCIS face. See, e.g., INS v. Miranda, 459 U.S. 14, 18 (1982) ("Both the number of the applications received by the INS and the need to investigate their validity may make it difficult for the agency to process an application as promptly as may be desirable"). In making a request for immigration benefits, "aliens only have those statutory rights granted by Congress," Marincas v. Lewis, 92 F.3d 195, 203 (3d Cir. 1996), and no federal statute or regulation prescribes a hard-and-fast deadline for acting upon immigration applications, such as the ones in this case, submitted to the USCIS. See Cordoba v. McElroy, 78 F. Supp. 2d 240, 244 (S.D.N.Y. 2000).

As discussed in Eldeeb, the FBI name check is a complex process. Eldeeb, 2007 WL 2209231, at *2; see also Exh. B, pp. 2-6 ¶¶ 4-12. It involves a check of a variety of sources, and although most name checks are resolved in a matter of hours, approximately 32 percent require additional, manual review. Eldeeb, 2007 WL 2209231, at *2. Of those remaining checks, 22 percent are returned within two months. Id. The FBI processes name checks chronologically, based on the date the name check is submitted. Id.

Before September 11, 2001, the FBI processed approximately 2.5 million name checks per year, checking only the "main" files. Id. at *3. In Fiscal Year 2006, the FBI processed over 3.4 million name checks. Id. In addition, the FBI began checking "reference" files. Id. This expansion of the name check procedures prompted USCIS, in December 2002 and January 2003, to resubmit

2.7 million name check requests, for those with pending applications for immigration benefits. Id. at *4. The FBI is currently still working to resolve 440,000 of these resubmitted name checks; because the FBI processes name checks chronologically, the processing of regular name checks has been delayed. Id. Name checks that exceed the two month window require personal attention of the processing agent. Id. at *5. The FBI currently processes approximately 340,000 name checks per year by hand. Id. Thus, it is evident that there are substantial factors contributing to the backlog.

c.    The Impact of the Delay is Minimal in Comparison with the National Interest in Complete and Thorough Background Checks

The third TRAC factor is the delay's impact on human health, welfare, and economic harm to Plaintiffs. This factor's analysis overlaps with the analysis of the fifth TRAC factor, the nature and extent of the interests prejudiced by the delay. TRAC, 750 F.2d at 80; Liberty Fund, 394 F. Supp. 2d at 118. Plaintiffs may be inconvenienced by the delay in adjudication, but this individual interest cannot outweigh Defendants' interests in fully and accurately completing each name check. Security background checks for individuals seeking immigration benefits is a key component to our nation's national security. See The 9/11 Commission Report, 2004 WL 1634382 at 352 (July 22, 2004) (finding that, "had the immigration system set a higher bar for determining whether individuals are who or what they claim to be....it could have potentially have excluded, removed, or come into further contact with several hijackers who did not appear to meet the terms for admitting short-term visitors.").

In most cases, the adverse impact caused by the delay is not substantial. Applicants for adjustment of status who have pending applications may apply for and obtain employment authorization for the entire time the application is pending. Additionally, most applicants may also apply for and receive advance parole to enable them to travel abroad during the pendency of their application. Exh. A, pp. 6-7 ¶ 18. Even when a more substantial impact is felt by an applicant, this impact, "is unlikely to rise to the level that would significantly change the Court's assessment of the unreasonableness of the delay in light of the importance of the agency's competing priorities." Liberty Fund, 394 F. Supp. 2d at 118. As the highest of priorities, "our national security requires

1    that caution and thoroughness in these matters not be sacrificed for the sake of expediency." <u>Safadi</u>
2    <u>v. Howard</u>, 466 F. Supp. 2d 696, 701 (E.D. Va. 2006). Although a delay in processing may have
3    a negative impact, "nevertheless, in this post-9/11 context, agencies must have the freedom to
4    carefully and thoroughly investigate these applications without judicial interference in their
5    priorities." <u>Patil v. Mueller, et al.</u>, No. C 07cv71 JCC, 2007 WL 1302752 at *2 (E.D. Va. Apr. 30,
6    2007) (holding that the Court had no jurisdiction to issue a writ of mandamus due to legal and policy
7    considerations). Thus, when balancing the agencies' interests in defending against threats to
8    national security against the Plaintiffs' interest in adjudication, the interests of the nation must
9    prevail.

            d.    The Effect of Expedition Would Intrude on Agency Discretion and
10                Prejudice Other "First In Line" Applicants

11

12        The court in <u>Sze v. INS</u>, No. C 97-0569 SC, 1997 WL 446236, at *8 (N.D. Cal.
13   Jul. 24, 1997), which applied the <u>TRAC</u> test to a similar complained-of delay in the immigration
14   context, found the fourth factor to be the most persuasive. <u>Id.</u> at *8. The court, in refusing to grant
15   relief under the APA, held that "the reasonableness of administrative delays must be judged in light
16   of the resources available to the agency." <u>Id.</u> The court also recognized that by granting relief, it
17   "would, at best, reorder the queue of applications, thereby leading to little net benefit." <u>Id.</u>; <u>see also</u>
18   <u>Liberty Fund</u>, 394 F. Supp. 2d at 117 (deferring to agency's decision on how to handle competing
19   applications for permanent labor certifications).

20        In <u>Liberty Fund</u>, the court refused to grant mandamus relief where it was requested solely
21   due to the length of the delay in processing alien labor certifications. 394 F. Supp. 2d at 115.
22   Applying the <u>TRAC</u> factors, the court held that without a statutory timetable governing agency
23   action, the <u>TRAC</u> factor, "that weighs most heavily under the circumstances of the case is the fourth
24   factor - the effect of granting relief on the agency's competing priorities." <u>Id.</u> at 116. The court
25   reasoned that the agency's "first in, first out processing" was deserving of deference because any
26   grant of relief to petitioners would result in no net gain - petitioners would move to the front of the
27   queue at the expense of other similarly situated applicants. After examining the agency's priorities,
28   growing workload, and good faith efforts to alleviate the delays, the court concluded that mandamus

1  relief was not warranted. Id. at 119.

2  Just as in Liberty Fund, Plaintiffs' argument of unreasonable delay in this case must also fail.
3  Plaintiffs ask this Court to find that USCIS has not adjudicated the I-130 and I-485 applications in
4  a reasonable period of time, here a period of less than two years. Plaintiffs' legal arguments under
5  Sections 555(b) and 706(1) of the APA fail because adjudication has not been unreasonably delayed.
6  Contrary to Plaintiffs' pleadings, the existence of administrative delays does not mean that such
7  delays are unreasonable. Courts have noted that "the reasonableness of such delays must be judged
8  in light of the resources that Congress has supplied to the agency for the exercise of its functions,
9  as well as the impact of the delays on the applicants' interests." Fraga v. Smith, 607 F. Supp. 517,
10 521 (D. Or. 1985) (citing Wright v. Califano, 587 F.2d 345, 353 (7th Cir. 1978)). Indeed, "[t]he
11 passage of time alone is rarely enough to justify a court's intervention in the administrative process."
12 Fraga, 607 F. Supp. at 521.

13 Similarly, the effect of expediting delayed agency action under the fourth TRAC factor
14 would unquestionably impinge upon agency activities and responsibilities of a higher priority. Such
15 an order would intrude on the agency's discretion and ability to fulfill its highest priority of
16 safeguarding the nation. See Boim v. Quranic Literacy Institute, 291 F.3d 1000, 1027 (7th Cir.
17 2002) ("the government's interest in preventing terrorism is not only important but paramount"); see
18 also Walters v. Reno, 145 F.3d 1032, 1043 (9th Cir. 1998) ("The Government's interests in the
19 administration of its immigration laws and in preventing [immigration related] document fraud are
20 likewise considerable.")

21 Delays in the processing of FBI name checks arise for a variety of reasons. First, USCIS is
22 not the only agency that engages in the FBI name check program. Notably, the FBI and USCIS
23 processes' do not occur in vacuums. Any requirement that the FBI or USCIS process Plaintiff
24 Chen's name check or application within a particular time limit will have the unfortunate side effect
25 of slowing the processing for other applicants who are also awaiting action on their applications for
26 immigration benefits.

27 The requests generally processed out-of-order are cases expedited by USCIS for specific
28 health, welfare, or economic reasons. See Exh. C. Absent these compelling reasons, moving some

individuals to the front of the queue would simply move that group ahead of others who also had been waiting, resulting in no net gain in processing. See In re Barr Lab., 930 F.2d at 75; Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1101 (D.C. Cir. 2003). Furthermore, ordering Plaintiffs' case to the front of the line sets the precedent that the more litigious applicants are most likely to move to the top of the pile at the expense of other applicants that have waited even longer, but may not have the resources to file suit. Manzoor v. Chertoff, 472 F. Supp 2d 801, 809 (E.D. Va. 2007); see also Yan, 2007 WL 1521732 at *7 (holding that a grant of review of petitioner's claims would only, "encourage other applicants to file suit to receive expedited treatment rather than wait their turn in line.").

Moreover, the courts have been cautioned against "engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 525 (1978). Here, where "there are no allegations of bad faith, a dilatory attitude, or a lack of evenhandedness on the part of the agency, the reasonableness of the delays in terms of the legislatively imposed 'reasonable dispatch' duty must be judged in light of the resources that Congress has supplied, as well as the impact of the delays on the applicants' interests." Wright, 587 F.2d at 353. The complexity of agency investigations, as well as the extent that the individual applicants contributed to delays, also enter into a court's deliberations. See Saleh v. Ridge, 367 F. Supp. 2d 508, 512 (S.D.N.Y. 2005). An agency's good faith efforts to address delays militate against a finding of unreasonableness. See Wright, 587 F.2d at 345.

e.    The Agencies are Exercising Every Effort to Address the Delay

The sixth and last TRAC factor provides that a court need not find impropriety to hold that an agency action is unreasonably delayed. Conversely, "the good faith of the agency in addressing the delay weighs against mandamus." Liberty Fund, 394 F. Supp. 2d at 120. Here, the delay is due to the pendency of Plaintiff Chen's FBI name check. See Exh. A, p. 8 ¶ 20. As discussed above, the FBI is processing the name checks to the best of its ability, and USCIS is monitoring the case to ensure that once the name check is complete, USCIS can complete adjudication. Thus, balancing the TRAC factors demonstrates the reasonableness of the Government's actions.

1    In addition, Plaintiffs have failed to show that USCIS will refuse to adjudicate their

2  applications once the FBI completes the requisite name check.  See Saleh, 367 F. Supp. 2d at 513;

3  see also Eldeeb, 2007 WL 209231, at *17 (finding that the plaintiff had failed to show that USCIS

4  was refusing to act on his application).  On the contrary, the FBI and USCIS are taking active steps

5  towards completing the background checks for adjudication of their applications.  Specifically,

6  USCIS is making every effort to complete adjudication as soon as the name check is completed.

7  Exh. A, pp. 7-8 ¶ 19.

8    Many courts have refused to grant relief under the APA, even when naturalization or other

9  immigration applications were pending for significant time periods.  See Saleh, 367 F. Supp. 2d at

10  513 (finding five-year delay not in violation of APA in part in light of volume of applications);

11  Espin v. Gantner, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (over three-year delay not unreasonable

12  because of government's limited resources and substantial caseload); Alkenani v. Barrows, 356 F.

13  Supp. 2d 652, 656-57 (N.D. Tex. 2005) (no unreasonable delay found in naturalization context

14  because of need to wait for completion of FBI investigation).  Just as in these cases, Plaintiffs in the

15  present case insist that this Court find an unreasonable delay based solely on the amount of  time

16  passed since receipt of her application.  However, the law requires a more in-depth analysis for

17  mandamus relief under the APA.  A review of the six TRAC factors shows that Defendants have not

18  unreasonably delayed actions pertaining to Plaintiffs' applications.

19    C.    MANDAMUS IS NOT AVAILABLE BECAUSE PLAINTIFF'S CLAIM IS NOT
20          CLEAR AND CERTAIN

21    Mandamus is reserved for those situations in which the plaintiff's claim is clear and certain.

22  Kildare, 325 F.3d at 1078.   Here, because Plaintiffs have failed to establish that action on their

23  applications have been unreasonably delayed, they have failed to show that their claim is so clear

24  and certain that mandamus is justified.  Furthermore, USCIS has exercised its discretion in

25  determining which name checks should be expedited.  See Exh. C.  Plaintiffs' case meets none of

26  these criteria.

27  ///

28  ///

**VI.  CONCLUSION**

For the foregoing reasons, the Government respectfully asks the Court to deny Plaintiffs' motion for summary judgment, dismiss Defendant Mueller, and grant Defendant Chertoff's motion for summary judgment as a matter of law.

Dated: September 25, 2007

Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney


_____/S/_____
MELANIE L. PROCTOR
Assistant United States Attorney
Attorneys for Defendants