SCOTT N. SCHOOLS (SC 9990)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
MELANIE L. PROCTOR (CSBN 228971)
Melanie.Proctor@usdoj.gov
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6730
FAX: (415) 436-6927

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| STEPHEN CHANG and HONGYAN CHEN, | ) ) ) | No. C 07-3562 SBA |
| Plaintiffs, | ) ) | |
| v. | ) ) | DEFENDANTS' ADDITIONAL BRIEFING |
| MICHAEL CHERTOFF, Secretary, Department of Homeland Security; ROBERT S. MUELLER, III, Director of the Federal Bureau of Investigation, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## I.   INTRODUCTION

Pursuant to the Court's Order dated October 5, 2007, Defendants hereby submit additional briefing on the questions raised by the Court.

## II.   DISCUSSION

### A.   THE FBI DOES NOT HAVE A STATUTORY DUTY TO PROCESS NAME CHECKS

The Federal Bureau of Investigation ("FBI") does not have a statutory duty to process "name check" requests from the U.S. Citizenship and Immigration Services ("USCIS"). Plaintiffs' contention that 28 U.S.C. § 534 requires the FBI to process name checks is based on a mistaken assumption that name checks involve the review of criminal history record information.  As

1  explained further below, "name checks" involve review of the FBI's <u>investigative</u> files.  These files

2  are completely separate and distinct from the criminal history records that are the subject of 28

3  U.S.C. § 534 and the regulations that implement that statute.

4      The name checks performed by the FBI at the request of USCIS consist of reviews of FBI

5  investigative records from the FBI's Central Records System.  As stated in the declaration of

6  Michael A. Cannon, Section Chief of the FBI's National Name Check Program Section:

> The National Name Check Program ("Program") has the mission of disseminating
> information from the FBI's Central Records System in response to requests
> submitted by federal agencies, congressional committees, the federal judiciary,
> friendly foreign police and intelligence agencies, and state and local criminal justice
> agencies.  The Central Records System ("CRS") contains the FBI's administrative,
> personnel, and investigative files.

11  <u>See</u> Declaration of Michael Cannon ("Cannon Decl."), p. 2 ¶ 4 (attached as Exhibit B to Defendants'

12  Opposition and Cross Motion (Docket No. 9-2).  The FBI's Central Records System includes  the

13  investigative records relating to the hundreds of federal violations over which the FBI has

14  investigative jurisdiction, and it includes information on subjects, suspects, victims, witnesses and

15  close relatives and associates who are relevant to an investigation.  <u>See</u> <u>Doe v. FBI</u>, 936 F.2d 1346,

16  1348 n.2 (D.C. Cir. 1991) (explaining that the Central Records System is the FBI's central filing

17  system, containing the agency's investigative records on various individuals and subject matters);

18  Cannon Decl., pp. 2-6 ¶¶ 5-12.

19      Thus, if during the course of an FBI criminal or intelligence investigation, the FBI obtains

20  relevant information regarding an individual, and such information is included in a written report,

21  such information will be found in an investigative file in the FBI's Central Records System.  For

22  example, during the course of an investigation into drug trafficking, the FBI may be told by an

23  informant that a certain alien is involved in transporting illegal drugs.  That information may be

24  included in a report of the FBI agent's interview with the informant.  That report would be placed

25  in the investigative file, which is part of the Central Records System.  If that alien subsequently

26  seeks to adjust his status, and if USCIS requests a name check, the FBI would likely locate that

27  information through a search of the Central Records System and report that derogatory information

28  to USCIS.

1  Criminal history record information, such as records of arrests and convictions, is separate
2  and distinct from the raw investigative reports and other types of investigative information contained
3  in the FBI's Central Records System.  Criminal history record information is contained in systems
4  of records other than the Central Records System, such as the Fingerprint Identification Records
5  System ("FIRS") and the Interstate Identification Index System ("III System"), which is accessible
6  through the National Crime Information Center ("NCIC").  See 28 C.F.R. § 20.3(l)-(n) (defining the
7  FIRS, the III System, and the NCIC, respectively, for purposes of the regulations regarding
8  exchange of criminal history record information); and 28 C.F.R. § 20.33 (discussing the
9  dissemination of criminal history record information); see also
10 http://www.fbi.gov/hq/cjisd/ncic_brochure.htm (describing the NCIC) (last visited Nov. 7, 2007).[1]
11 Thus, to continue the hypothetical cited in the previous paragraph, where an alien was alleged to be
12 involved in drug trafficking, it may be that the alien was never arrested.  In that situation, a search
13 of only a criminal history record would result in no records, whereas the name check would do so.

14 With the distinction in mind between investigative records, which are searched during the
15 FBI name check, and criminal history records, which are not, it becomes clear that 28 U.S.C. § 534
16 does not cover investigative files.  By its terms, and as its title suggests, § 534 is concerned with the
17 acquisition, preservation, and exchange of identification and criminal history record information,
18 not information from the FBI's investigative files.  See Menard v. Saxbe, 498 F.2d 1017, 1029 (D.C.
19 Cir. 1974) (discussing legislative history of § 534 and noting that § 534(a)'s current language was
20 intended to restate, without substantive change, the initial statutory authorization to acquire and
21 preserve "criminal identification and other crime records").[2]  Similarly, the regulations upon which

22

_____

23 [1]In addition to the name check, USCIS requests criminal history record information from the
24 FBI, in the form of a fingerprint check.  See Declaration of Constance Yuen ("Yuen Decl."), USCIS
   Ombudsman/District Adjudication Officer, p. 2 ¶ 4 (attached as Exh. A to Defendants' Opposition
25 and Cross Motion (Docket No. 9-2); see also Yuen Decl., Fact Sheet (describing the three different
   checks used by USCIS, including the FBI fingerprint check and the FBI name check).

26 [2]As indicated in Menard, the phrase "and other records" at the end of § 534(a)(1) cannot
27 reasonably be read to be a broad expansion of the statute which would engulf the FBI's raw
   investigative records. Menard, 498 F.2d at 1029; see also United States Dept. of Justice v. Reporter
28 Committee for Freedom of Press, 489 U.S. 749, 751-52 (1989) (discussing the history behind

Plaintiffs rely in their additional briefing, 28 C.F.R. § 0.85(b) and (j), concern exchanges of "identification" records, not "investigative" records.  Moreover, the regulations which implement § 534 clearly do not contemplate the exchange of investigative information.  The Appendix to the implementing regulations explains that the definition of "criminal history record information" with respect to 28 C.F.R § 20.3(d)

> does <u>not</u> extend to other information contained in criminal justice agency reports. Intelligence or investigative information (e.g., suspected criminal activity, associates, hangouts, financial information, and ownership of property and vehicles) is <u>not</u> included in the definition of criminal history information.

28 C.F.R. § 20, App. (emphasis added).  The legislative history behind the original statute is particularly instructive:

> There are two classes of information that is gathered.  One is criminal records, and another is the information that is gathered about criminals that is not a matter of record. . . . That information is gathered for the department itself and its agents, in order that they more effectually do their work.

<u>Menard</u>, 498 F.2d at 1029 n.42 (quoting 72 Cong. Rec. 1989 (71st Cong., 2d Sess, Jan. 20, 1930) (Statement of Rep. Cochran).

<u>Hammons v. Scott</u>, 423 F. Supp. 625 (N.D. Cal. 1976), also relied on by Plaintiffs, is not to the contrary.  <u>Hammons</u> concerned the maintenance, use, and dissemination of arrest records.  <u>Id.</u> at 627-28.  Arrest records clearly fall within the definition of "criminal history record information." 28 C.F.R. § 20.3(d).  <u>Hammons</u> did not involve investigative records from the Central Records System such as those reviewed during an FBI name check.  Moreover, there is no suggestion in <u>Hammons</u> or in any other case, statute, or regulation of which Defendants are aware that suggests

5 U.S.C. § 530, the predecessor to § 534, and the establishment of the FBI's Identification Division for the purpose of "acquiring, collecting, classifying, and preserving criminal identification and other crime records").  Applying the statutory canon of <u>ejusdem</u> <u>generis</u>, the term "other records" necessarily means records similar to those listed.  <u>See, e.g.</u>, <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 114-115 (2001) (canon of <u>ejusdem</u> <u>generis</u> states that "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.") (internal citation omitted). Moreover, sub-sections 534(a)(2) and (3) would appear to be superfluous if investigative records were already covered under § 534(a)(1).

1     that 28 U.S.C. § 534 compels the FBI to share investigative information found within the FBI's

2     Central Records System.

3         B.     8 U.S.C. § 1105(b)(1) DOES NOT INCLUDE NAME CHECKS

4         Plaintiffs' contention that 8 U.S.C. § 1105(b)(1) is relevant to name checks is based on the

5     same misunderstanding that underlies their arguments regarding 28 U.S.C. § 534. As stated above,

6     name checks are checks of the investigative files in the FBI's Central Records System. In contrast,

7     8 U.S.C. § 1105(b)(1) refers specifically to an obligation to provide access to the information

8     maintained in the NCIC. See 8 U.S.C. § 1105(b)(1) ("shall provide the Department of State and

9     Service access to the criminal history record information contained in the National Crime

10    Information Center . . . ."). The NCIC is totally separate and distinct from the FBI's Central Records

11    System. The NCIC is a computerized database available to virtually every law enforcement agency

12    in the United States, containing property files (such as files on boats, guns, and license plates) and

13    person files (such as the Convicted Sexual Offender Registry, Foreign Fugitives, and Identity Theft

14    files). As explained above, the III System, which contains automated criminal history record

15    information, is accessible through the NCIC. See http://www.fbi.gov/hq/cjisd/ncic_brochure.htm;

16    see also Privacy Act of 1974; Notice of Modified Systems of Records, 64 Fed. Reg. 52,343, 52,343-

17    44 (Sept. 28, 1999). In contrast, the Name Check Program involves a search of investigative records

18    in the Central Record System, not the NCIC. Thus, contrary to Plaintiffs' argument, neither 8

19    U.S.C. § 1105(b)(1) nor 28 C.F.R. § 0.85(f) (which also refers specifically to the NCIC) addresses

20    the Central Records System.[3]

21        C.     THE FBI PROCESSES NAME CHECKS PURSUANT TO AN AGREEMENT
             WITH USCIS, NOT PURSUANT TO A STATUTORY DUTY
22

23        The Court's third question is whether the FBI may simply refuse to process name checks,

24    and if not, why not. The FBI performs name checks for USCIS pursuant to an agreement between

25

26    _____

27        [3]The Court's second question included a question as to whether the Attorney General and
      the Director of the FBI have a statutory duty under 8 U.S.C. § 1105(b)(1) to provide the USCIS with
28    access to criminal history records. For the reasons stated above, this question does not bear on the
      name checks performed by the FBI at the request of the USCIS.

1    the agencies; thus, having agreed to perform them, the FBI could not simply refuse to process a

2    particular name check.  However, Defendants are not aware of a legal requirement that the FBI agree

3    with USCIS to perform the name checks.

4         The FBI's discretionary authority to release information from its Central Records System

5    is set forth in the routine uses published as part of the Privacy Act Notice for the Central Records

6    System.  See 5 U.S.C. § 552a(b)(3) (allowing dissemination of records pursuant to a published

7    routine use).  One of the routine uses published in the Privacy Act Notice for the Central Records

8    System is that

9            information from this system may be disclosed as a routine use to any Federal
             agency where the purpose in making the disclosure is compatible with the law
10           enforcement purpose for which it was collected, e.g., . . . to assist the recipient
             agency in the performance of any authorized function where access to records in this
11           system is declared by the recipient agency to be relevant to that function.

12   Privacy Act of 1974, Notice of Modified Systems of Records, 63 Fed. Reg. 8,659, 8,682

13   (Feb. 20, 1998) (emphasis added).[4]  Furthermore, in 1990, Congress provided that if the FBI so

14   desired, it could establish and collect fees to process name checks:

15           for fiscal year 1991 and hereafter the Director of the Federal Bureau of Investigation
             may establish and collect fees to process fingerprint identification records and name
16           checks for non-criminal justice, non-law enforcement employment and licensing
             purposes and for certain employees of private sector contractors with classified
17           Government contracts, and notwithstanding the provisions of 31 U.S.C. 3302, credit
             such fees to this appropriation to be used for salaries and other expenses incurred in
18           providing these services, and that the Director of the Federal Bureau of Investigation
             may establish such fees at a level to include an additional amount to establish a fund
19           to remain available until expended to defray expenses for the automation of
             fingerprint identification services and associated costs . . . .
20

21   Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations

22   Act of 1991, Pub. L. 101-515, 104 Stat. 2102, 2112 (emphasis added).  The use of the word "may"

23   indicates that the name check program is discretionary, and that Congress did not impose any duty

24   on the part of the FBI to perform such acts.  Pacific Marine Conservation Council, Inc. v. Evans, 200

25   F. Supp. 2d 1194, 1201 (N.D. Cal. 2002) (describing "may" as discretionary language).

26

27        [4]The reference to 28 U.S.C. § 534 in the Privacy Act notice does not override the fact the
     statute's implementing regulations clearly state that investigative records are not included in
28   criminal history records.  28 C.F.R. § 20, App.; see also Footnote 2, supra.

1    For this reason, Defendants respectfully ask the Court to join the vast majority of courts

2    across the nation, and recognize that the FBI is not properly named in litigation seeking adjudication

3    of applications for immigration benefits.  See Liang v. Attorney General of the United States, No.

4    07-cv-02349 CW, slip. op., at 6-7 ("the APA does not confer jurisdiction over the FBI in connection

5    with an action for judicial review of the USCIS's failure to act on an adjustment of status

6    application") (N.D. Cal. Oct. 30, 2007); Clayton v. Chertoff, et al., No. 07-cv-02781-CW, slip. op.,

7    at 4-7 (N.D. Cal. Oct. 1, 2007) (dismissing non-Homeland Security defendants because neither the

8    Federal Bureau of Investigation ("FBI") nor the Attorney General have the statutory obligation or

9    authority to adjudicate adjustment applications); Eldeeb v. Chertoff, No. 07-cv-236-T-17EAJ, 2007

10   WL 2209231, at *21 (M.D. Fla. July 30, 2007) (dismissing the FBI, stating that the duty owed by

11   the FBI is to USCIS, not the plaintiff); Konchitsky v. Chertoff, No. C-07-00294 RMW, 2007 WL

12   2070325, at *6-7 (N.D. Cal. July 13, 2007) (stating "courts squarely addressing the issue of whether

13   they have jurisdiction to compel the FBI to perform name checks . . . have overwhelmingly

14   concluded that they do not."); Yan v. Mueller, No. H-07-0313, 2007 WL 1521732, at *6 (S.D. Tex.

15   May 24, 2007) ("The evidence shows that the delay is due, not only to the volume of requests that

16   the FBI receives, but also to the FBI's exercise of discretion in determining the timing for

17   conducting the many name check requests that it receives and the manner in which to conduct those

18   checks." (emphasis added)); Dmitriev v. Chertoff, No. C 06-7677 JW, 2007 WL 1319533, at *4

19   (N.D. Cal. May 4, 2007) (dismissing the FBI without comment on jurisdiction); Li v. Chertoff, et

20   al., 482 F. Supp. 2d 1172, 1179 (S.D. Cal. 2007) ("Additionally, Plaintiff has not pointed to any

21   statute or regulation requiring the FBI to complete her name check in any period of time, reasonable

22   or not."); Sozanski v. Chertoff, et al., No. 06-cv-0993, 2006 WL 4516968, at *1 (N.D. Tex.

23   Dec. 11, 2006) (holding that federal district courts lack jurisdiction to compel the FBI to perform

24   name checks in adjustment of status cases).

25   D.    NAMING THE UNITED STATES AS DEFENDANT WOULD NOT CONFER
          JURISDICTION OVER THE FBI

26

27   The Court's fourth question asks whether the Court would have jurisdiction to compel the

28   FBI Director to complete the name check if Plaintiffs had simply named the United States of

America as a defendant, as the Administrative Procedure Act ("APA") provides that a claim to compel agency action unlawfully withheld or unreasonably delayed may be brought against the United States. 5 U.S.C. §§ 702, 703. However, as noted by Plaintiffs in their additional briefing, a mandatory or injunctive decree issued by the Court against the United States would have to "specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance." 5 U.S.C. § 702. Thus, Plaintiffs cannot end-run around this issue by naming the United States as a defendant. The Court would remain confronted with the fact that it does not have the authority to compel the Director of the FBI to complete the name check within a particular time period.

As Defendants stated in their Opposition to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment (Docket No. 9), the APA provides that it does not confer jurisdiction where agency action is committed to agency discretion by law. 5 U.S.C. § 701(a)(2). The FBI's name check investigation involves a discretionary function. See Yan, 2007 WL 1521732, at *6 ("The evidence shows that the delay is due, not only to the volume of requests that the FBI receives, but also to the FBI's exercise of discretion in determining the timing for conducting the many name check requests that it receives and the manner in which to conduct those checks."); Li, 482 F. Supp. 2d at 1179 ("Additionally, Plaintiff has not pointed to any statute or regulation requiring the FBI to complete her name check in any period of time, reasonable or not."); Sozanski, 2006 WL 4516968, at *1 (holding that federal district courts lack jurisdiction to compel the FBI to perform name checks in adjustment of status cases).

### III.    CONCLUSION

For the foregoing reasons, Defendant Mueller respectfully asks the Court to dismiss the Complaint against him.

Dated: November 8, 2007                      Respectfully submitted,

                                             SCOTT N. SCHOOLS
                                             United States Attorney

                                             _____/s/_____
                                             MELANIE L. PROCTOR
                                             Assistant U.S. Attorney
                                             Attorneys for Defendants